Good morning, Justices. My name is Nicholas Estrada, and I represent the appellants in this case. I just have one quick issue I'd like to clarify, then I'll answer any questions you might have. The only issue I'd like to clarify is the utilization of a case of Zurcher v. Stanford Daily by the appellees to attempt to justify the search in this case. The Zurcher case, as the Court knows, involved the search of the Stanford Daily newspaper offices and not a home. The case at hand involves the intrusion of the appellant's home. Residential premises are still given special protection under the Fourth Amendment. Now, does the panel have any questions? Well, my main question is this. Even if you put all of the information into the affidavit that you claim was omitted, let's just assume it was material and it was omitted, and you put it back in, it seems to me it doesn't change the calculus, because you have such detailed information from the confidential informant as to residency here. So tell me if I'm missing something on that. Well, Your Honor, I think our issue is the scope of the warrant. The magistrate needs to know who's living there and who has dominion and control in the residence, and a mere houseguest would not have dominion and control over the entire residence. So that was a very important issue. So you think the warrant would have been written that it would simply say that you could search her area and nothing else? Well, her area under her dominion. Bedrooms of anybody else? What would the magistrate have done in approving the warrant? Well, first of all, he needed to know that it was their residence, number one, and then he could determine how long the other person, the targeted third person, had lived there, and he could determine how much access she had to the rest of the residence. When the officers executed the search warrant, I believe my clients advised the executing officers that the targeted person did not have control or access to the entire residence, and they still went ahead and executed the search warrant. But the language on the warrant has something to this effect. It says, property in the possession of another to whom suspect may have delivered it. Why wouldn't it be reasonable to assume or to think that, even though somebody didn't have complete dominion over the house, that living in it they may well have delivered it to a third party also residing at the house? Well, that's true, Your Honor, but I mean I think we're overlooking the real issue is how much control the targeted third person had in that home and where she could concede or hide the drugs. And as a note, I understand, as a matter of fact, I don't believe a third person was ever arrested. The third person in the search warrant, she was not even arrested, just my clients. That's an important issue to consider. Counsel, this case originally was dismissed on a 12B6. It was dismissed on a 12B6, right? Yes, Your Honor. And so are you making the argument at all that the complaint was sufficient to meet Rule 8A? What's the gravamen of your argument? Well, Your Honor, I understand the standard review for this case is de novo review. Right. And we're just arguing that there were sufficient facts in the first amendment complaint to state a claim. To survive a 12B6. Yes, Your Honor. So in order for you to prevail under 12B6, in your view, was it necessary for you to allege the material information that was omitted from the affidavit? Well, I believe we did allege that. I understand, but was it necessary? My question is, was it necessary for you to allege that in order to survive? In order to survive that challenge, yes, Your Honor, I do believe that I had to allege it. That was my only questions once I've given to you, if you have anything further. Thank you, Justice. Thank you. I have to say it's very refreshing for somebody to assume we have read the briefs, which we have, and we've prepared, and to wait for our questions. Thank you. Thank you. May it please the Court, in this case the psalmists are seeking a rule that has never been established by this court or any other. And that rule is that when a search warrant is being sought, the state and even federal authorities, if this court were to announce such a rule, would be required whenever seeking a warrant in a single-family residence to obtain evidence as to who lives there, whether there are guests present, and what areas of the single-family dwelling each person who resides there or is a guest there has access to by authorization of the owners or even without authorization of the owners but still has physical access to that or those locations. That rule is not supported by any precedent. It's not supported by common sense, and it should not be established by this court. The facts of the case are well briefed. The record is obviously very complete. The case of Mena v. City of Siena Valley is quite relevant, and it talks about a fact pattern where officers had substantially more information about the inside of the home in question, and this court held that there was absolutely no evidence for the officers to have concluded that the affidavit was overbroad and requesting a warrant that was overbroad. I don't think that there's any information in this case that would lead to a contrary conclusion, and I also would leave it at that and ask the court if it has any questions. Counsel, what was your name for the record? My name is John Kirby, Your Honor. Thank you. Thank you. I have no questions. No questions. Thank you, Your Honor. Your Honors, my name is Walt Hogan. I represent the City of Bishop and individuals Robles, Gomez, Nelson, Kaiser, and Moskowitz. I've prepared all these notes. I'm prepared to make all kinds of stirring speeches, but I've also read my brief, and I've read the briefs of the others. I believe all the issues have been addressed. I think it is important to recall that this was a search for items evidencing crime. This was not a search for a particular individual, and that the items evidencing the crime could be hidden anywhere in the house. To do what the appellant has suggested and to find out who lives there and who has control over such portions of the house would require such an investigation that it would alert the occupants of the house as to what was going to happen, which would defeat much of the purpose of a search warrant. Wouldn't hear because they knew who lived there from before. In other words, if you went and checked the records and you had knowledge, as these officers did, that doesn't alert anybody, does it? I understand that. But to go beyond that, to say that you have to go in and find out what portions of the – before getting the search warrant, that you have to find out what portion of the house Gloria Dempsey has versus what portion somebody else has, that would almost necessitate that you actually talk to the people to find that out. That would be the only practical way to get the information, and that would alert those – not only here, but in any case, as to what was coming. Other than that, I would submit on the briefs and certainly entertain any questions that the Court may have. No. On behalf of the City of Bishop, the case is submitted. Thank you. As well as for Oropkin and the others represented by Mr. Kirby. Your Honor, Justin Tierney. I represent Officer Burns, and I'll also be brief. He was merely an assisting officer. It was a motion for summary judgment in Officer Burns' case. He's with the Mono County Department, not with Inyo County. He has no knowledge of who lives there. He does not search the bedroom of the Samores. He only searches a downstairs basement area and an empty bedroom. And I think under the case law, where he's proceeding with a facially valid warrant, he has no reason to believe that there's anything wrong with his search, but he's entitled to qualified immunity. Thank you. No questions. Mr. Estrada, anything further? I would like to point out to Mr. Hoka's argument regarding that you would have to interview the residents of the home to find out who lived there. This is a small town, Bishop, California, and everybody knew everybody else. One of the executive officers lived five homes away from the residents, so it wasn't like they had to go in there and ask them, do you live there? They knew that they lived there. Counsel, how would they know what areas of the home were accessible to each of the respective residers? Admittedly, Justice Rawlston, that would be a difficult question because the only way they could find out would be to ask her. That was his point. Right. But I think he was referring to the Samores, whether or not they lived there. As far as the mirror house guest, that would be difficult to ascertain. But I think it's something that just the issuing magistrate should have known when he issued the search warrant. But how would that change the warrant? Well, intellectually, the issuing magistrate should have known that someone else lived there. It was their home. There was another guest there, so maybe he might have asked the deputy to bring in more information as to who lived there and how long had she lived there and whether or not it was a true residence. He would ask the deputy to provide him with more information. We're not talking about a big city here. As a matter of fact, when they went into the home and they saw the Samores there and the Samores told the executive officers, wait a minute, we're here now, she doesn't even live here, they could have stopped at that point and picked up the phone and got a telephonic search warrant. There was no rush to execute the invalid search warrant at that point. But they didn't do that. Well, of course, that assumes it's an invalid search warrant. It seems to me that if you see her coming and going and you've got the documented drug deals and she has told the confidential informant that that is her residence, I can't see that they would go in and get some other telephonic warrant. You've got to put yourself to a tiny bit in the shoes of the officers. They've got this warrant. They've got this information. They go in and lo and behold. They have her come and go, I think, on one day. There's only one drug purchase on one day. Right. At least she allegedly says to the informant that that is her residence. And then she tells somebody else that she's moving, I don't know, a table or something from another place to this place. She tells someone else that she went to her other residence. That's what she said, I'm going to my other residence to pick up a table. So there's an issue there that I don't think anybody really knew where she lived. If she did live there, it was only for a matter of a week or two. It wasn't a long-time residence. We're just saying that the police officers could have done more. This isn't a big city. The issuing magistrate needed that information and he wasn't given it. On that, I'll submit it. Counsel, let me ask you this before you submit. What's your response to counsel for Officer Burns' position that Officer Burns was in a different position? A different category. Different category than the other officers. That may be true, Your Honor. Excuse me, Justice Rawlinson. I don't believe he had the knowledge that the other executing officers did. So do you agree that the entry of summary judgment on the basis of qualified immunity was proper? No, I don't believe so. I believe he should have read the search warrant. And based on that, I understand when they entered the home, they were told that the search warrant was invalid, and at that point he should have questioned the other officers whether or not it was valid. So it's your view that an assisting officer has an obligation to question the primary officers in terms of the validity of the warrant if the target of the warrant challenges the warrant? Oh, they weren't the targets. That's the whole issue, Justice Rawlinson. Well, if the occupants of the home challenged the warrant, then you would impose an obligation on an assisting officer to query the primary officers? I would believe so in this situation, Justice Rawlinson, because there was no urgency. It was a home in a small town. It was a high drug or high crime area, and they had time to do this with caution. Okay, what if Officer Burns does question the supervising officer on the scene, and the supervising officer reassures Officer Burns that everything is okay, the warrant is fine? Then if Officer Burns continues to participate, is that okay in your view? I think as a sworn police officer, he had a duty to request a telephonic search warrant at that point. Who's your best case authority for that proposition? I don't have case authority, just common sense, Your Honor. All right. Justice. All right. Thank you. The case of Summer v. Robles is submitted.
judges: Ferguson, McKeown, Rawlinson